UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| In Re: | § | |
| | § | Case No. 19-11649-tmd |
| WC 56 EAST AVENUE, LLC, | § | |
| | § | Chapter 11 |
| Debtor. | § | |

### LIMITED OBJECTION TO MOTION FOR AUTHORITY TO USE CASH COLLATERAL ON AN INTERIM AND FINAL BASIS

TO THE HONORABLE TONY M. DAVIS, UNITED STATES BANKRUPTCY JUDGE:

56 East Avenue, L.P. ("Lender") submits this *Limited Objection* (the "Objection") to Debtor's *Motion for Authority to Use Cash Collateral on an Interim and Final Basis* [Dkt. No. 2] (the "Cash Collateral Motion"), which was filed in the above-styled and numbered Chapter 11 bankruptcy case (the "Bankruptcy Case") on December 2, 2019, and would show the Court as follows:

### I. SUMMARY

1. Lender holds a fully perfected lien and is the beneficiary under a deed of trust against certain real property and related property interests of the Debtor, including but not limited to all cash subject to the Cash Collateral Motion. Lender objects to the Cash Collateral Motion and does not consent to the use of cash collateral absent the inclusion of provisions that adequately protect Lender's interests. Such provisions include the following:

- Adequate protection payments must be made in light of the fact that the Debtor has been in default since at least September 4, 2019,[1] and the Note was duly and properly

---

[1] Debtor acquired Additional Property in violation of covenants contained in the Loan Documents in March of 2019, apparently by act of state statute. The September 4, 2019 date is indicated here because on that date Debtor monetized its interested in the Additional Property through a Rule 11 Agreement with the City of Austin in a condemnation proceeding relating to the Additional Property. In the State Court proceedings referred to below involving Second Beneficiary and Lender, Debtor argued that it did not own the Additional Property

accelerated pre-petition;

- Adequate protection payments must be made inasmuch as even if the Note were not accelerated pre-petition, Debtor has failed to make interest payments in the months of November and December as called for under the Note;2

- Adequate protection payments must be made in light of the fact that even if Debtor had not previously defaulted on the Note, the Note by its own terms would mature on January 1, 2020, which is less than a month after the Petition Date;

- Replacement liens must be provided; and

- Other standard language should be included concerning tax escrow, insurance, maintenance of a separate cash collateral account, and other provisions.

## II. BACKGROUND FACTS

2. On December 12, 2017, Debtor executed that certain Deed of Trust, Security Agreement, and Financing Statement (the "Deed of Trust"), and recorded as Document No. 2017196451 of the Official Public Records of Travis County, Texas, which covers and effects, among other property, that certain real property and related property interests ("Property") described in **Exhibit A** hereto.

3. The Deed of Trust conveyed the Property to a trustee in favor of U.S. Real Estate Credit Holdings III-A, LP, an Irish limited partnership (the "Original Beneficiary"). A substitute trustee under the Deed of Trust was subsequently appointed.

4. The Deed of Trust secures, among other indebtedness and obligations described therein, the payment of a Promissory Note ("Note") dated December 12, 2017 in the stated principal sum of $15,000,000.00, executed by the Debtor and payable to the order of the Original

---

2 The November payment under the Note, for instance, would have been $152,655.46. This amount includes $120,286.46 in accrued interest, $23,954.08 escrow - tax, $1,145.61 escrow - insurance, and $7,269.31 late charge.

Beneficiary.

5. To further secure the Note, Debtor also executed and delivered to Original Beneficiary an Assignment of Leases and Rents (World Class - 56 East Avenue) (the "Assignment of Leases"). The Assignment of Leases was recorded as Document No. 2017196452 of the Official Public Records of Travis County, Texas. The liens, security interests and assignment of the Deed of Trust, the Assignment of Leases and of all other documents and instruments now or hereafter governing, evidencing, guaranteeing, or securing or otherwise relating to payment of all or any part of the indebtedness evidenced by the Note (collectively, the "Loan Documents") are hereinafter collectively called the "Liens". By this reference, the Deed of Trust and the Assignment of Leases are hereby incorporated herein for all purposes.

6. Original Beneficiary transferred and assigned the Note, the Deed of Trust, the Assignment of Leases, the other Loan Documents and the Liens to U.S. Real Estate Credit Holdings III, LP, an Irish limited partnership (the "Second Beneficiary") pursuant to (i) that certain Assignment of Deed of Trust, Security Agreement, and Financing Statement dated February 22, 2018, recorded as Document No. 2018027847 of the Official Public Records of Travis County, Texas, (ii) that certain Assignment of Assignment of Leases and Rents dated February 22, 2018, recorded as Document No. 2018027846 of the Official Public Records of Travis County, Texas, and (iii) that certain UCC-3 Financing Statement, recorded as Document No. 2018028676 of the Official Public Records of Travis County, Texas.

7. On October 9, 2019, Second Beneficiary notified the Debtor that Second Beneficiary had learned through communications received from the City of Austin that Debtor had become the owner of a piece of real property (the "Additional Property") in violation of certain covenants contained in the Loan Documents (the "Non-Monetary Default") and that

3

Debtor was in involved in a condemnation proceeding regarding the Additional Property and through which Debtor had received payment from the City of Austin relating to transfer of certain rights to the Additional Property. Pursuant to the Loan Documents, the Debtor covenanted, represented, and warranted that it did not and would not own any property other than the Property. Based upon Debtor's default thereunder, the Second Beneficiary accelerated the Note (the "Acceleration") and took proper and appropriate steps to foreclose on the Property.

8. On October 24, 2019, Debtor filed its Application for Temporary Restraining Order and Injunction in the 250th Judicial District of Travis County, Texas (the "State Court"), Cause No. D-1-GN-10-007411. A temporary restraining order was entered on or about October 29, 2019.

9. Second Beneficiary transferred and assigned the Note, the Deed of Trust, the Assignment of Leases, the other Loan Documents and the Liens to 56 East Avenue, LP ("Lender") pursuant to (i) that certain Assignment of Mortgage/Deed of Trust and Assignment of Leases and Rents dated October 30, 2019, recorded as 2019170522 of the Official Public Records of Travis County, Texas, and (ii) that certain UCC-3 Financing Statement, recorded as Document No. 2019170870 of the Official Public Records of Travis County, Texas.

10. On November 12, 2019, an evidentiary hearing was held in the State Court on Debtor's request for a temporary injunction. The State Court denied the request and Lender re-noticed and posted the Property for foreclosure on December 3, 2019.

11. On November 19, 2019, Debtor sought a second temporary restraining order, arguing that Lender had not timely noticed the foreclosure for December 3, 2019 and again requested that the State Court restrain Lender from foreclosure, all despite the fact that Debtor had not paid the November interest payment then past due. After a hearing on November 22,

2019, the State Court denied Debtor's request for a second temporary restraining order.

12. On December 2, 2019 (the "Petition Date"), the proverbial eve of foreclosure, Debtor filed its Chapter 11 petition initiating this Bankruptcy Case.

13. Debtor has argued in the State Court that the Non-Monetary Default was not a default and that therefore the Acceleration was improper. Accepting arguendo the Debtor's position, under the terms of the Note Debtor would be responsible for making interest payments to Lender for the months of November, 2019 and December, 2019, which it did not do.

14. The Note, by its own terms and absent the Acceleration, matures on January 1, 2020.

### III. OBJECTION AND AUTHORITIES IN SUPPORT

15. Down to its basics, this Bankruptcy Case is nothing more than a simple, single asset real estate case filed to stay Lender from exercising its rights when two prior attempts to accomplish the same thing failed in the State Court. Nevertheless, Debtor now seeks to put Lender's collateral position at greater risk through this proceeding and create potential diminution in value based upon an incomplete budget.

16. Section 363(c)2) of the Bankruptcy Code provides that a debtor in bankruptcy may not use cash collateral unless each creditor holding an interest in the collateral consents, or unless the court, after notice and hearing, authorizes the debtor's use of the cash collateral. 11 U.S.C. §363(c)(2). "Cash collateral is a precious commodity . . . and the Bankruptcy Code mandates that authorization of the use of such a commodity can be granted only when the creditor's interest in those funds can be adequately protected in some manner." *In re Goode*, 235 B.R. 584, 590 (Bankr. E.D. Tex. 1999).

17. Thus, the requirement of adequate protection under 11 U.S.C. §363(e) is mandatory, and "[i]f adequate protection cannot be offered, such use . . . of the collateral must be prohibited." *See* 3 COLLIER ON BANKRUPTCY ¶ 363.05[2] (Alan N. Resnick & Henry J. Sommers eds., 16th ed.). Section 361 of the Bankruptcy Code offers several examples of adequate protection, including "periodic cash payments," and "additional or replacement lien," or such other relief "as will result in the realization by such entity of the indubitable equivalent of such entity's interest in such property." 11 U.S.C. §361. Section 361(3), however, "expressly provides that the grant of an administrative priority is not an acceptable means of providing adequate protection." *See* 3 COLLIER ON BANKRUPTCY ¶ 361.01 (Alan N. Resnick & Henry J. Sommers eds., 16th ed.). "The circumstances of the case will dictate the necessary relief to be given." *Id*. If the secured creditor does not consent to the use of cash collateral, then the debtor bears the burden of establishing, prior to the use of any cash collateral, that the secured creditor's interest is adequately protected. *See* 11 U.S.C. §§ 363(e), (p); *see also* 3 COLLIER ON BANKRUPTCY ¶ 363.05[5] (Alan N. Resnick & Henry J. Sommers eds., 16th ed.)

18. Where, as here, a debtor seeks to use cash collateral, it must provide one of three types of adequate protection: (1) periodic payments; (2) replacement liens covering the declined in the collateral's value; or (3) by some other means that provides the indubitable equivalent of the creditor's interest in the affected property. 11 U.S.C. §361.

19. Here, the proposed Budget is woefully inadequate. The Budget fails to provide line item amounts for known and required expenses of the Bankruptcy Case. The Budget omits, among other expenses, debt service (including post-petition interest at the default rate) and attorney's fees. Moreover, the Budget provides for the Debtor to operate with less than $53,000.00 in positive cash flow, and the proposed interim order accompanying the Motion

contemplates a carte blanche variance in favor of Debtor, subject only to Debtor's "business judgment" and "consistent with past practices."

20. In addition, the Budget described its income as "Gross Potential Rent" and "Estimated CAM, Tax and Insurance Charges," which based on its Motion, comes from one single tenant and $5,590.00 in "Parking Revenue." The Budget also is purported to be for one month and is not broken down in weekly increments. Without standard details such as those, it is difficult to evaluate the reasonableness and necessity of the expenses set forth in the Budget and will be impossible to monitor whether any granted interim use of cash collateral for a period which is less than one month complies with the parameters set forth in the Budget. As such, the Budget is inadequate and needs to be reformed to reflect weekly increments and detail the exact dates that are represented therein.

21. Importantly, with regard to the financial substance of the Budget, when viewed against the backdrop of the fact that Debtor's annual cash flow is insufficient by almost half to cover interest due to the Lender, allegations in the Cash Collateral Motion and the Budget indicating that Lender can be adequately protected as proposed do not contain much credibility. In fact, if monthly debt service to Lender at even the non-default rate of approximately $152,655.46 were to be included in the Budget, the Budget would reflect negative net income right out of the gate in this Bankruptcy Case.

22. Given the bleak financial status of Debtor and the fact that Debtor is already in default, Lender does not consent to the use of cash collateral as presently proposed by Debtor. Debtor has failed to satisfy its burden of establishing that Lender's interests are adequately protected and Debtor should therefore not be permitted to use $86,571.41 of Lender's cash over a period in which Debtor appears to have no realistic strategy to resolve this Bankruptcy Case or

locate a buyer. Given that the Note itself matures on January 1, 2020, it is unlikely that Debtor can achieve over the next few weeks what it has failed to accomplish in the months leading up to the Petition Date.

### A. Adequate Protection Payments

23. Due to Debtor's prepetition default, Lender is entitled to post-petition default interest. The Debtor asserts that Lender is over-secured (see Cash Collateral Motion at ¶5), and Lender is accordingly entitled to receive default interest payments during the post-petition period. *See, e.g. In re Yazoo Pipeline Co., L.P.*, Case No. 08-38121, 2009 WL 2857863, *3 (default rate presumptively applies); *In re Terry Ltd. Partnership*, 27 F.3d 241, 244 (7th Cir. 1994) (over-secured creditor is entitled to post-petition default interest). Post-Petition interest accrues at approximately $120,000.00 per month.

### B. Replacement Liens

24. Any cash collateral order must include replacement liens, as routinely included in cash collateral orders entered particularly in single asset real estate cases. Lender objects to the numerous restrictions suggested by Debtor with respect to such liens under the circumstances.

25. Notably, replacement liens do not per se constitute adequate protection. Because Lender already has security interests in all assets and revenues, any replacement liens are likely nothing more than liens to which Lender is already entitled. *See, e.g. In re Las Torres Dev., L.L.C.*, 413 B.R. 687, 695 (Bankr. S.D. Tex. 2009) (denying debtor's use of cash collateral for lack of adequate protection on grounds that debtor could not grant replacement liens where lender already had a lien on the collateral). In fact, replacement liens on the already encumbered Collateral would provide little value or security to Lender. *See In re LTAP US, LLP*, 2011 WL 671761, at *3 (Bankr. D. Del., Feb. 18, 2011) (finding that "[p]roviding [a secured creditor] with

a replacement lien on assets against which it already has a lien is illusory [protection]. [The] Debtor must provide [the creditor] with additional collateral."); *see also In re Pac. Lifestyle Homes, Inc.* 2009 WL 688908, at *11-12 (Bankr. W.D. Wash., Mar. 16, 2009) (explaining that a potential increase in non-cash collateral value through continued operations, coupled with liens on already-encumbered collateral, was insufficient adequate protection for the use of cash collateral). This rings especially true here, where Lender already holds a secured interest in essentially all of Debtor's assets. Thus, Debtor's proposed "adequate protection" proves entirely inadequate.

26. As such, Lender submits that replacement liens alone cannot suffice to protect Lender's interests and that adequate protection payments are essential to protect Lender's interest under the circumstances.

**C. Other Provisions**

27. Lender requests that other standard form provisions commonly used in cash collateral orders entered by this and other courts, particularly in single asset real estate cases, be included in this instance. Such provisions include, but are not limited to, the following:

   a. Tax escrow: Any amounts under the budget for annual taxes should be placed in escrow pursuant to standard language.

   b. Budget: The proposed budget provided by the Debtor and attached as an Exhibit to the Cash Collateral Motion is inadequate. It does not, among other things, list the Debtor's income from its property. Lender requests that the Budget be revised so that it more clearly identifies both the income and the proposed expenses.

   c. Maintenance of Insurance: Language should be included requiring

9

       maintenance and payment of insurance on the property, as required under the Bankruptcy Code and the Loan Documents

d. Separate Account: Any cash collateral should be maintained in a separate debtor-in-possession account and not commingled with other funds.

e. Other standard language: Other standard language should be included confirming that Debtor may not make payment from cash collateral other than as set forth in the Order and the Budget. Use of cash collateral should terminate on a date certain at the end of the interim period.

## IV. RESERVATION OF RIGHTS

28. Nothing in this Limited Objection or in any orders entered on the Cash Collateral Motion constitutes a waiver of any default or any rights, claims, or defenses to which Lender is otherwise entitled under the Bankruptcy Code or applicable law, and should not impact or restrict Lender's existing liens or security interests.

29. While the above provisions are appropriate and a necessary part of any interim order of the Cash Collateral Motion, Lender submits that they still will not render Lender adequately protected under the circumstances of this Bankruptcy Case. As such, Lender reserves the right to request dismissal of this Bankruptcy Case, to seek relief from the automatic stay to pursue foreclosure and other remedies available to it pursuant to the Loan Documents, and other relief.

WHEREFORE, Lender respectfully requests that this Court deny the Cash Collateral Motion or that any order on the Cash Collateral Motion only be entered if the modifications requested herein be included.

Respectfully submitted,

GRAVES, DOUGHERTY, HEARON & MOODY, P.C.
401 Congress Avenue, Suite 2700
Austin, TX 78701
Telephone: 512.480.5626
Facsimile: 512.536.9926

By:/s/ Brian T. Cumings
  Christopher H. Trickey
  State Bar No.
  ctrickey@gdhm.com
  Brian T. Cumings
  State Bar No. 24082882
  bcumings@gdhm.com

**COUNSEL FOR SECURED CREDITOR
56 EAST AVENUE, L.P.**

## CERTIFICATE OF SERVICE

 I hereby certify that on this the 6th day of December, 2019, I electronically filed this Limited Objection with the Clerk of Court using the CM/ECF system which will send notification of such filing to those receiving electronic service and by U.S. First Class Mail to those listed below and to those not receiving electronic service as reflected on the attached Service List.

| | |
|---|---|
| United States Trustee - AU12<br>United States Trustee<br>903 San Jacinto Blvd., Suite 230<br>Austin, TX 78701-2450 | WC 56 East Avenue, LLC<br>814 Lavaca St.<br>Austin, TX 78701<br>*Debtor* |
| Morris Weiss<br>Waller Lansden Dortch & Davis, LLP<br>100 Congress Ave., Suite 1800<br>Austin, TX 78701<br>*Debtor's Counsel* | |

By:/s/ Brian T. Cumings
  Brian T. Cumings